UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK GUBALA and JOHN NORRIS, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 14 C 9299<br>) |
| ALLMAX NUTRITION, INC., and HBS INTERNATIONAL CORP., Canadian Corporations, | ) Judge Sara L. Ellis<br>)<br>)<br>) |
| Defendants. | )<br>) |

**OPINION AND ORDER**

In what is an almost identical complaint to that filed in *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) ("*Gubala I*"), Plaintiff Derek Gubala sets his sights on Allmax Nutrition, Incorporated ("Allmax") and HBS International Corporation ("HBS") (collectively "Defendants"), manufacturers and distributors of bodybuilding and sports nutrition supplements, alleging that like CVS, they tricked him and Plaintiff John Norris into buying their product "Hexapro" by misrepresenting both the quality and quantity of protein contained in the dietary supplement.[1] Plaintiffs bring this class action lawsuit against Defendants alleging that Hexapro's misleading label violates § 343(a) of the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, as amended by the National Labeling and Education Act ("NLEA"), 21 U.S.C. § 341 *et seq.*, and asserting claims pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp.

---

[1] Plaintiffs also assert claims as to Defendants' product AllWhey. Because the Court later concludes that Plaintiffs do not have standing to pursue these claims, any factual discussion of AllWhey is omitted from this Opinion.

Stat. 505/1 *et seq.* and various other state consumer fraud acts, as well as claims for unjust enrichment and breach of express warranty. Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims in their entirety as preempted by the NLEA and for failure to state a claim. Defendants also move to dismiss Plaintiffs' claims against Defendant Allmax for lack of personal jurisdiction under Rule 12(b)(2) and Plaintiffs' claims as to the AllWhey product for lack of standing pursuant to Rule 12(b)(1). Because the Court finds that it does not have jurisdiction over Defendant Allmax, that Plaintiffs do not have standing to bring a claim with regard to AllWhey, and that Plaintiffs' claims are either preempted by the NLEA or fail as a matter of law, Defendants' motion to dismiss [36] is granted.

## BACKGROUND[2]

Defendant Allmax is a Canadian corporation that sells bodybuilding and sports nutrition supplements in the U.S. and Canada through its wholly-owned subsidiary, Defendant HBS. One such product is Hexapro. Plaintiff Gubala, an Illinois resident, purchased Hexapro from a Vitamin Shoppe located in Wheaton, Illinois for approximately $39.00. Plaintiff Norris, a South Carolina resident, purchased Hexapro from a Vitamin Shoppe located in Greenville, South Carolina for approximately $39.00.

Hexapro's front label, pictured below, contains the wording "Ultra–Premium 6–Protein Blend" directly above the product name, "Hexapro." Plaintiffs allege that this "statement of identity" is intended to lead consumers to believe that Hexapro contains protein derived

---

[2] The facts in the background section are taken from Plaintiff' First Amended Complaint ("Amended Complaint"), and documents incorporated by reference therein, and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to a plaintiff's claims, however, the court may consider it in ruling on the motion to dismiss. *Id*.

exclusively from this ultra–premium blend. Doc. 23 ¶ 20. Similarly, Plaintiffs allege that Hexapro's representation in the upper right–hand corner of the front label that it contains "25 G[rams] Protein Per Serving" is intended to lead consumers to believe that the 25 grams of protein per serving are derived exclusively from this ultra–premium protein blend. Plaintiffs allege these representations are misleading because they distract consumers from the fact that Hexapro contains only 17.914 grams of protein per serving. This discrepancy is attributable to a process Plaintiffs refer to as "protein spiking," whereby manufacturers add significant amounts of less expensive nitrogen-containing free-form amino acids to their products. Because FDA regulations permit protein content to be calculated using nitrogen as the "tag," manufacturers add these ingredients to their products so that they can claim a higher protein content, and charge a correspondingly higher price, while keeping manufacturing costs low. Doc. 23 ¶ 14. These ingredients are not complete protein sources, however, and therefore do not provide the same health benefits as whole proteins.



**Ingredients:** HEXAPRO™ 6-Protein Blend (Whey Protein Concentrate [WPC 80%, Cold-Temperature Processed, Cross-Flow Microfiltered], Milk Protein Isolate [80% Casein:20% Whey], Whey Protein Isolate [WPI 90%, Cold-Temperature Processed, Cross-Flow Microfiltered], Micellar Casein [MC 90%, Undenatured], Egg Albumin, Hydrolyzed Whey), HEXAPRO™ AminoPlex (L-Glycine, L-Taurine, L-Leucine, L-Isoleucine, L-Valine), HEXAPRO™ Suspension Matrix (Maltodextrin, Fibersol-2®, Inulin, Xanthan Gum, Cellulose Gum, Carrageenan), HEXAPRO™ Lipid Fuel (Sunflower Oil, Soy Oil, High-MCT Coconut Oil, CLA (Conjugated Linoleic Acid), High-Omega3 Flax Seed Oil).
**Other Ingredients:** Cocoa Powder, Natural and Artificial Flavors, Caramel Color, Sodium Chloride, Acesulfame Potassium, Sucralose.
**ALLERGEN INFORMATION:** Contains Protein derived from Milk and Egg; contains Lecithin derived from Soy (less than 1%). Produced in a facility that also handles peanut, tree nut, fish, crustaceans/shellfish, and wheat products.

## Supplement Facts

Serving Size: 44 g
Servings Per Container: 56

| Amount Per Serving | | % Daily Value* |
|---|---|---|
| Calories | 176 | |
| Calories from Fat | 36 | |
| Total Fat | 4 g | 6% |
| Saturated Fat | 1 g | 5% |
| Trans Fat | 0 g | - |
| Monounsaturated Fat | 3 g | 13% |
| Cholesterol | 24 mg | 8% |
| Sodium | 122 mg | 5% |
| Potassium | 370 mg | 11% |
| Total Carbohydrate | 10 g | 3% |
| Dietary Fiber | 4 g | 16% |
| Sugars | 1 g | - |
| Protein | 25 g | 50% |
| Vitamin A | 13 IU | 0% |
| Vitamin C | 0.01 mg | 0% |
| Calcium | 113 mg | 11% |
| Iron | 0.3 mg | 2% |

* Percent Daily Values are based on a 2,000 calorie diet.



| | Serving Size: | 1 scoop (31g) |
|---|---|---|
| | Servings Per Container: | 29 |
| Amount Per Serving | | % Daily Value* |
| Calories | 120 | |
| Calories from Fat | 10 | |
| Total Fat | 1 g | 2% |
| Saturated Fat | 0.5 g | 3% |
| Trans Fat | 0 g | † |
| Cholesterol | 30 mg | 10% |
| Sodium | 55 mg | 2% |
| Potassium | 210 mg | 6% |
| Total Carbohydrates | 3 g | 1% |
| Dietary Fiber | 1 g | 4% |
| Sugars | 1 g | † |
| Protein | 25 g | 50% |
| Vitamin A | | 0% |
| Vitamin C | | 0% |
| Calcium | | 6% |
| Iron | | 2% |

**INGREDIENTS:** Tri-Stage Whey Protein Matrix™ [WPC80™ (Microfiltered Whey Protein Concentrate [80%]), WPI90™ (CTP™ Whey Protein Isolate [90%]), WPI97™ (Hydrolized Ultra Filtered Whey Protien Isolate (Low Molecular Weight Whey Peptides)], **Tri-Amino Recovery Blend** (Taurine, Glycine, Creatine Monohydrate), **Omega EFA™** (Cold-Pressed Flaxseed Oil Powder, Borage Oil (GLA), Conjugated Linoleic Acid (CLA)), **DIGESTOL™** (Lactase (Lactose Reducing Enzyme), Bromelain (Protein Digesting Enzyme), Protease (Protein Digesting Enzyme), Alpha-Amylase).

**OTHER INGREDIENTS:** Oat fiber, Cocoa Powder (processed with alkali), Natural and Artificial Flavors, Xanthan Gum, Acesulfame Potassium, Sucralose, Soy Lecithin.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Central States, Se. & Sw.*

*Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Plaintiffs' Amended Complaint, while drafted as a consumer fraud class action, is really an attack on the manner in which the FDA permits protein content to be calculated. Plaintiffs dedicate the majority of their Amended Complaint to attacking the previously described practice of "protein spiking." But this Court is not the appropriate forum in which to address this issue. Defendants accordingly move to dismiss Plaintiffs' claims primarily arguing that they are

preempted by the NLEA. Defendants also move to dismiss Plaintiffs' claims on the alternative bases that: (1) the Court does not have personal jurisdiction over Allmax, (2) Plaintiffs do not have standing to bring a claim as to AllWhey, and (3) Plaintiffs have failed to state a claim as to their consumer fraud and unjust enrichment claims. The Court addresses each argument in turn.

I. Standing[3]

Defendants argue that Plaintiffs lack Article III standing to raise claims as to AllWhey because neither named Plaintiff purchased AllWhey and therefore, neither named Plaintiff sustained an injury with regard to that product. *See Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008). Plaintiffs concede that neither named Plaintiff purchased AllWhey. Plaintiffs argue that they have standing to pursue their claims nonetheless because AllWhey's label is substantially similar to Hexapro's. Specifically, each product's label allegedly falsely represents that it contains 25 grams of "quality" protein when, as discussed above, the products have been "spiked with cheap filler ingredients." Doc. 42 at 14.

As Plaintiffs point out, a plaintiff has standing to assert claims on behalf of unnamed class members for products she did not purchase where "there is sufficient similarity between the products purchased and not purchased." *Mednick v. Precor Inc.*, No. 14 CV 3624, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014). In making this determination, courts analyze the similarities of both the physical products and the alleged misrepresentations. *Id.* In this case, Plaintiffs are correct that Hexapro and AllWhey's labels represent that each product contains 25 grams of protein per serving. That is where the similarities end, however. Hexapro and AllWhey contain different types of proteins – Hexapro contains an "Ultra–Premium" protein

---

[3] The Court addresses issues of standing and personal jurisdiction first. *Cumis Ins. Soc., Inc. v. TCT Fed. Credit Union*, No. 09-cv-759-BBc, 2010 WL 843691, at *1 (W.D. Wis. Mar. 5, 2010) ("The general rule is that a court should first decide its own jurisdiction to hear the case." (citing *Avila v. Pappas*, 591 F.3d 552, 553 (7th Cir. 2010))).

7

blend and AllWhey contains whey protein. The products also contain different amino acids and other non-protein ingredients. Their labels, pictured above, reflect the different formulations and ingredients. It necessarily follows that Plaintiffs' arguments as to what makes each product's label misleading are different. *Compare* Doc. 23 ¶ 15 ("Hexapro's actual protein content is…17.914 grams per serving and AllWhey's actual protein content is…13.3 grams per serving."); *id.* ¶¶ 19–20 (Hexapro's label is misleading because its statement of identity "Ultra–Premium 6–Protein Blend" "is prominently stated on the principal display panel of the label[,]" "lead[ing] consumers to believe that the Product contains protein derived exclusively from the 'Ultra–Premium 6–Protein Blend'"); *id.* ¶¶ 21–22 (alleging that Hexapro's label is also misleading because "adjacent to the statement of identity, the label states the Product contains '25 G[rams] Protein Per Serving,'" "lead[ing] reasonable consumers to believe that the Product contains 25 grams of the" premium protein blend); *with id.* ¶ 31 ("Defendants naming the product 'AllWhey' misleads reasonable consumers to believe that AllWhey's protein content consists entirely of *all whey* protein."); *id.* ¶ 32 ("Defendant also displays the misleading claim, '100% Whey Protein' just above the claim '25 G of Protein Per Serving' on the front of the AllWhey product label…mislead[ing] consumers to believe that the 25 grams of protein are derived exclusively, or 100%, from Whey Protein."); *id.* ¶ 34 ("Defendants make another misleading claim, '81% Pure Protein in every scoop,' on the front of the AllWhey product label.").

This case is thus factually inapposite from *Mednick*, the case upon which Plaintiffs solely rely. Doc. 42 at 14. In *Mednick,* the named plaintiffs had purchased a particular model of Precor treadmill that included touch sensors to monitor the users' heart rate. *Mednick,* 2014 WL 6474915, at *1. The plaintiffs filed suit against Precor asserting that the touch sensors in the

8

treadmill they purchased, as well as eighteen additional Precor machines that included the touch sensors, were inaccurate. *Id.* The court found that the named plaintiffs had standing to assert claims as to all nineteen machines, even though they had only purchased one particular model, because the touch sensors "fill[ed] the same function on every machine…they [we]re used in the same manner on every machine…[and] [t]hey…fail[ed] in the same manner." *Id.* at *4. Thus, each of the named plaintiffs' "claim[s] rel[ied] on essentially the same misrepresentation," indeed, "some of the misrepresentations [we]re identical." *Id.*

The Court finds this case to be more factually analogous to *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2012 WL 2397012 (N.D. Ill. June 21, 2012). In *Padilla*, the named plaintiff asserted ICFA claims against Costco for misrepresenting the effectiveness of various Costco dietary supplements, one of which plaintiff had not purchased. *Id.* at *1–2. The court found that the plaintiff did not have standing to bring a claim for the supplement he had not purchased because the claims "relate[d] to two different products that have different product formulations and labels." *Id.* at *3. The court held that the plaintiff could not "use the class-action device to predicate standing on [an] injury which he d[id] not share." *Id.* (quoting *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002)) (internal quotation marks omitted).

Likewise, the Court declines to allow Plaintiffs to assert standing "through the back door of a class action." *Payton*, 308 F.3d at 682. As previously explained, the product formulations for Hexapro and AllWhey are not substantially similar, the labels for each product are not substantially similar, and accordingly, Plaintiffs' claims as to why each label is misleading are not substantially similar. The Court thus finds that Plaintiffs do not have standing to assert a claim as to AllWhey and all such claims are dismissed without prejudice.

9

## II. Personal Jurisdiction over Allmax

Defendants argue that the Court should dismiss Allmax from this suit because the Court does not have personal jurisdiction over it. There are two types of personal jurisdiction: general and specific. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Plaintiffs argue only that the Court has specific personal jurisdiction over Allmax. The Court limits its analysis accordingly.[4]

A complaint "need not include facts alleging personal jurisdiction." *Purdue*, 338 F.3d at 782 (citation omitted) (internal quotation marks omitted). And indeed Plaintiffs' Amended Complaint does not contain much in the way of allegations regarding personal jurisdiction. *See* Doc. 23 ¶ 9 ("Defendants transact business and/or have agents within this District."). Once a defendant raises the issue of personal jurisdiction through a 12(b)(2) motion, however, the plaintiff is required to put forth sufficient facts demonstrating personal jurisdiction. *Purdue*, 338 F.3d at 782.

There are three requirements to finding specific jurisdiction:

(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 673 (citations omitted). Plaintiffs fail to satisfy the first prong. In attempting to meet the 'purposefully availed' requirement, Plaintiffs rely on the fact that Plaintiff Gubala purchased Hexapro from a Vitamin Shoppe (a company not alleged to be owned by either Defendant) located in Illinois and on the vague allegation that "Allmax [] consciously targeted the entire U.S. market through their direct sales/distribution agreements and

---

[4] Even had Plaintiffs argued that the Court had general personal jurisdiction over Allmax, the Court would have disagreed. *See Felland*, 682 F.3d at 673 (finding defendant did not meet the high threshold for general jurisdiction because there were not sufficiently extensive and pervasive contacts to approximate physical presence).

advertising…[and] cannot credibly argue the sale of the Products in Illinois was unforeseeable." Doc. 42 at 8. But foreseeability is not the test. The simple fact that Allmax's product happened to end up in a store in Illinois is not sufficient for the Court to find that Allmax "deliberately engaged in significant activities within the forum state." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Purdue*, 338 F.3d at 780–81)). Plaintiffs have thus failed to adequately demonstrate that the Court has personal jurisdiction over Allmax and it is dismissed from this action.

### III. Preemption

As previously discussed, prior to filing the present suit, Plaintiff Gubala filed an almost identical lawsuit against CVS. *See Gubala I*, 2015 WL 3777627. In *Gubala I*, Gubala alleged that CVS deceptively labeled its "Whey Protein Powder" product in violation of various state consumer fraud acts and ICFA, as well as asserting claims for unjust enrichment and breach of express warranty. *Id.* at *1. Specifically, as in the present case, Gubala claimed that "he was deceived by the use of the phrases "Whey Protein Powder" and "26 grams of high–quality protein," on the product's front label into believing the 26 grams of protein were purely whey protein" when in fact, CVS used protein spiking to artificially inflate the amount of protein claimed in the product. *Id.* at *2. Like Defendants here, CVS filed a motion to dismiss the complaint on the basis that Gubala's claims were expressly preempted by the NLEA. Finding that "[Gubala's] claims would require [CVS] to label their products in a" way that is not required by the NLEA, the court determined that Gubala's claims were preempted. *Id*. at *4. For the reasons that follow, this Court adopts the analysis from *Gubala I* and likewise finds that Plaintiffs' claims are preempted.

"The NLEA establishe[s] a regulatory scheme for food labeling and for regulating nutrient content claims on food labels." *Id.* at *3 (citing 21 U.S.C. § 341). Under this regulatory scheme, states are expressly prohibited from establishing "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title…, or any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r)." 21 U.S.C. § 343-1(a)(4)–(5); *see also Gubala I*, 2015 WL 3777627, at *3. Under § 343(q), foods that are intended for human consumption must list certain nutritional information on their labels including "the total protein contained in each serving size or other unit or measure." 21 U.S.C. § 343(q)(1)(D). FDA regulations allow "[p]rotein content [to] be calculated on the basis of the factor of 6.25 times the nitrogen content of the food." 21 C.F.R. § 101.9(c)(7). The NLEA thus expressly preempts state or local law regulating the labeling of protein content in food." *See Gubala I*, 2015 WL 3777627, at *3. In other words, states may not enact requirements regarding the labeling of protein content in food unless they are identical to those contained within the NLEA.

Turning to Plaintiffs' claims, Plaintiffs do not argue that the mere restating of "25 G[rams] protein per serving" on the front of Hexapro's label is improper. Put another way, Plaintiffs do not argue that Hexapro's label is misleading because it misrepresents the quantity of protein contained in the product. Rather, while not clearly articulated, Plaintiffs seemingly allege that Hexapro's label is misleading because it misrepresents the quality of the protein contained therein. The label allegedly does so in two ways: (1) by placing the language "25 [G]rams protein per serving" "adjacent to [Hexapro's] statement of identity," 'Ultra–Premium 6–Protein Blend,' Doc. 23 ¶¶ 21–22, and (2) by prominently placing Hexapro's statement of

identity immediately above the word "Hexapro," *id.* ¶¶ 19–20.  Plaintiffs argue that by labeling Hexapro in this way, Defendants lead consumers to believe that the 25 grams of protein per serving are comprised exclusively of the ultra–premium protein blend when it is not.

Notably, Plaintiffs do not specify how Hexapro's label should be altered to remedy its alleged misleading nature, instead vaguely arguing that "the misleading nature of the labels could be remedied in a number of ways not involving the imposition of requirements that are 'not identical' to the requirements given preemptive effect."  Doc. 42 at 10–11.  The Court is therefore left to intuit how Plaintiffs believe Hexapro's label could be altered to address the alleged misleading content.  The only remedy the Court could fashion would be to "require [Defendants] to specifically identify each source of protein in the Product."  *Gubala I*, 2015 WL 3777627, at *4.  But the NLEA does not contain such a requirement.  Indeed, the FDA specifically "rejected a proposal to enforce stricter requirements for labeling products…as 'sources' of protein."  *Id*.  "Comments were submitted to the FDA suggest[ing] that…source claims for protein should be based on protein quality as well as level because such claims may be misleading if a food contains a lower quality protein."  *Id.*  The FDA rejected this proposed requirement.  *Id.*  To require Defendants to augment their label to distinguish the sources, and respective quality, of proteins would impose a requirement that the NLEA does not.  Plaintiffs' claims, to the extent they are premised on the misrepresentation of the quality of the protein in Hexapro, are preempted.

IV.     **Non-Preempted Claim**

As in *Gubala I*, while not clearly articulated, Plaintiffs' Amended Complaint could be read as asserting a claim that is not preempted by the NLEA: that Hexapro's label is misleading because it causes consumers to believe that the product is made entirely of the "Ultra–Premium

13

6–Protein Blend," when it has "significant amount[s] of free form amino acids and non-protein ingredients." Doc. 23 ¶ 20. This claim is not preempted by the NLEA because it seeks to enforce the requirement that a food not be labeled in such a way as to lead consumers to believe that it is made solely of one ingredient when it is made of multiple ingredients. *See* 21 C.F.R. § 101.18(b) (a food is misbranded, and therefore misleading, if it is labeled "by a name which includes or suggests the name of one or more" ingredients despite the fact that it contains more than that one ingredient.). Though not preempted, Defendants argue that this claim should be dismissed because Plaintiffs have failed to adequately plead that the label is misleading. The Court agrees.

Notably, Plaintiffs do not put forth a substantive argument in opposition. The one page of Plaintiffs' opposition brief dedicated to addressing this portion of Defendants' motion is a string of legal conclusions without any application of those conclusions to the facts of this case. For instance, Plaintiffs do not respond to Defendants' argument that Hexapro's label is not misleading because it clearly states that in addition to the "6 ultra-high quality proteins," it contains a "5 Amino Acid Blend with BCAAs" (Branched Chain Amino Acids). Doc. 37 at 12. This language is prominently located on the front of the label directly beneath the name of the product, "Hexapro." In addition, the words "Decadent Chocolate Milkshake" are also prominently displayed on the front label. These statements, not acknowledged by Plaintiffs, signal to consumers that the product they are purchasing is not made solely of the ultra–premium protein blend, but contains other ingredients as well. "[T]hus the label does not create a likelihood of deception or have the capacity to deceive." *Gubala I*, 2015 WL 3777627, at *6.

Plaintiffs rest on the legal argument that whether a label is misleading is a question of fact, therefore not resolvable at this stage of the litigation. Doc. 42 at 13. But that is not always

the case. As the court pointed out in *Gubala I*, "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *See Gubala I*, 2015 WL 3777627, at *6 (quoting *Ibarrola v. Kind, LLC*, No. 13 C 50377, 2015 WL 1188498, at *3 (N.D. Ill. Mar. 12, 2015)) (internal quotation marks omitted); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001). "[I]n determining whether the allegations in [the] complaint state [an ICFA] claim for relief that satisfies the requirements of Rule 12(b)(6), [the Court] ask[s] whether the allegedly false and misleading statements on which" Plaintiffs' ICFA claims are based "create a likelihood of deception or [] have the capacity to deceive." *Bober*, 246 F.3d at 938. For the reasons previously stated, the Court finds that they do not. This claim is dismissed without prejudice.

## V.     Breach of Express Warranty Claim

Plaintiffs assert a breach of express warranty claim against Defendants. Plaintiffs do not, however, specifically identify the warranties they believe Defendants made, and subsequently breached, with regard to Hexapro. Instead, they vaguely allege that Defendants warranted that Hexapro contained certain ingredients that it did not, and that its protein content was derived from complete proteins when it was not. Defendants move to dismiss this claim on the basis that it is preempted by the NLEA. Plaintiffs argue separately that their breach of express warranty claim is not preempted because the alleged warranties, and the requirements that stem from them, were not imposed by the State but voluntarily taken on by Defendants and are therefore not preempted by the NLEA.

Plaintiffs are correct that "breach of warranty claims are generally not preempted because they are not requirements imposed under State law, but rather imposed by the warrantor." *Ackerman v Coca-Cola, Inc.*, No. CV–09–0395, 2010 WL 2925955, at *7 (E.D.N.Y. July 21,

15

2010) (citation omitted) (internal quotation marks omitted). Regardless, to the extent Plaintiffs' breach of warranty claim is premised on Hexapro's alleged misrepresentation regarding the quality of the protein it contains, the Court finds that the claim fails for another reason: because "assertions to customers that their products are of high quality…are viewed as 'puffing,' rather than express warranties." *Gubala I,* 2015 WL 3777627, at *7 (alteration in original) (citation omitted) (collecting cases). Plaintiffs' claim, while not clearly articulated, presumably rests on Defendants' representation that Hexapro is made of "ultra–premium" protein. This is purely opinion language, not a warranty. *Id.* Plaintiffs' breach of warranty claim, to the extent that it is based on representations as to the quality of the protein, thus fails. To the extent Plaintiffs' breach of warranty claim is premised on the alleged misrepresentation that the sole ingredient in Hexapro was the ultra–premium protein blend, that claim is dismissed for the reasons discussed *infra* in Section IV.

## VI.     Unjust Enrichment Claim

Plaintiffs' unjust enrichment claim is premised on the same allegations as those underlying their consumer fraud claims – that Defendants' products were misleadingly labeled. Where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the…unjust enrichment [claim] will stand or fall with the related claim." *Cleary v. Phillip Morris Inc.*, 656 F.3d 511, 517–18 (7th Cir. 2011). For the reasons previously stated, the Court finds that Plaintiffs' consumer fraud claims are either preempted by the NLEA or insufficiently pleaded. Plaintiffs' unjust enrichment claim therefore fails as well. *See Gubala I*, 2015 WL 3777627, at *8.

**CONCLUSION**

For the above stated reasons, Defendants' motion to dismiss [36] is granted and Plaintiffs' First Amended Complaint is dismissed without prejudice. Plaintiffs have until November 9, 2015 to file a Second Amended Complaint that rectifies the issues addressed herein. Failure to file a Second Amended Complaint may result in this matter being dismissed with prejudice.

Dated: October 26, 2015

SARA L. ELLIS
United States District Judge